IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ROBERT P. CAULK, | § |
| | § No. 398, 2018 |
| Defendant Below, | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § |
| STATE OF DELAWARE, | § Cr. ID Nos. N1705002474 & |
| | § N1705004722 |
| Plaintiff Below, | § |
| Appellee. | § |

Submitted: January 23, 2019
Decided: March 19, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

**O R D E R**

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1)     On January 8, 2018, after a two-day bench trial, the Superior Court found the appellant, Robert P. Caulk, guilty of three counts of Robbery in the First Degree and one count of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF") and not guilty of two counts of PDWDCF. After granting the State's motion to declare Caulk a habitual offender under 11 *Del. C.* § 4214(d), the Superior Court sentenced Caulk as follows: (i) for two counts of Robbery in the First Degree, as a habitual offender, twenty-five years of Level V incarceration for each count, with credit for time served; (ii) for one count of Robbery in the First

Degree, fifteen years of Level V incarceration, suspended after three years for decreasing levels of supervision; and (iii) for PDWDCF, two years of Level V incarceration. This is Caulk's direct appeal.

(2) The charges arose from robberies of the same 7-Eleven in Wilmington on April 19, 2017, May 4, 2017, and May 8, 2017. At trial, the 7-Eleven clerk testified, through an interpreter, about all three robberies. The clerk testified that, on April 19, 2017, a man tried to buy something with his card, but the card did not work. The man told the clerk to go ahead and ring up another customer. After the clerk finished dealing with the other customer and the customer left, the man pulled a knife out and told the clerk to open the register and give him the money. The clerk opened one of the registers and gave the money in it as well as lottery tickets or cigarettes to the man. The robbery was reported to the police.

(3) The clerk testified that, on May 4, 2017, the same man came up to him from behind, pressed a knife against his back, and demanded money from the register. The man took money from the register and also took cigarettes. Based on a review of the video footage of both robberies and other investigation, the police determined that Caulk was the primary suspect. The clerk identified the photograph of Caulk as the person who robbed the store on April 19th and May 4th. A warrant was issued for Caulk's arrest.

2

(4)    On May 8, 2017, Caulk returned to the 7-Eleven.  The clerk immediately recognized him as the person who had previously robbed the store and testified that he showed him something black that the clerk thought might be the knife.  He took money from the register as well as cigarettes and lottery tickets.  The clerk identified Caulk again in a photograph array.  A customer who was at the store during the robbery identified Caulk as the robber at trial.

(5)    Caulk was arrested not long after the third robbery.  According to one of the testifying police officers, Caulk was arrested in a stained sweatshirt and pants that matched the clothes of the man in the video of the last 7-Eleven robbery.  At the time of his arrest, Caulk was carrying money, cigarettes, a screwdriver, and a cell phone.

(6)    The police obtained search warrants to search the phone and Caulk's house.  An analysis of cell tower data showed that the cell phone taken from Caulk was in use near the 7-Eleven around the time of the May 4th and May 8th robberies.  During the search of the house, the police found a blue hooded sweatshirt that appeared similar to the clothing of the man in the video of the April 19th and May 4th robberies.  A set of latent fingerprints collected from an interior door at the 7-Eleven did not match Caulk's fingerprints.  The State played surveillance video of all three robberies at trial.

(7)    At the conclusion of the State's case, Caulk moved for a judgment of acquittal as to the May 8th robbery, arguing that the clerk did not expressly testify that Caulk had a weapon. The Superior Court denied the motion. Caulk also asked for the Superior Court to consider Robbery in the Second Degree as a lesser included offense for the May 8th robbery, which the Superior Court agreed to do. The Superior Court dismissed Aggravated Menacing charges and related weapon charges and stated that it would consider Aggravated Menacing as a lesser included offense of the May 4th robbery.

(8)    Caulk exercised his right not to testify and did not submit any evidence. The Superior Court found Caulk guilty of three counts of Robbery in the First Degree and one count of PDWDCF as to the April 19th robbery. The Superior Court found Caulk not guilty of PDWDCF as to the May 4th and May 8th robberies. This appeal followed.

(9)    On appeal, Caulk's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Caulk of the provisions of Rule 26(c) and provided Caulk with a copy of the motion to withdraw and the accompanying brief.

(10)    Counsel also informed Caulk of his right to identify any points he wished this Court to consider on appeal. Caulk has raised points for this Court's

4

consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(11) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1] Caulk's arguments on appeal may be summarized as follows: (i) his trial counsel was ineffective and Counsel has a conflict of interest in raising ineffective assistance of counsel claims because he works in the same office as trial counsel (the Office of Defense Services); (ii) the Superior Court erred by ignoring double jeopardy issues; (iii) it was not established beyond a reasonable doubt that Caulk had a weapon; (iv) the Superior Court should have declared a mistrial based on the clerk's perjury; (v) Sergeant Michael Gifford committed perjury when he testified that he was at the scene of Caulk's arrest because Officer Thomas Lynch testified he was the only one at the scene; (vi) he was not informed of his *Miranda* rights when he was stopped, frisked, and arrested; and (vii) the Superior Court erred by admitting a blue hooded sweatshirt that was found at his house.

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

(12) In general, the Court does not consider ineffective assistance of counsel claims on direct appeal and does not do so here.[2] As a result, Caulk's conflict claim in this situation is without merit. Caulk may pursue his ineffective assistance of claims in a motion for postconviction relief under Superior Court Criminal Rule 61.

(13) Caulk's double jeopardy claims are without merit. "The Double Jeopardy Clauses of the United States and Delaware Constitutions protect a criminal defendant against multiple punishments or successive prosecutions for the *same* offense."[3] Caulk committed three separate robberies on April 19th, May 4th, and May 8th and could be convicted for each robbery. To the extent Caulk contends that he could not be convicted of Robbery in the First Degree and PDWDCF, this Court has held that a defendant may be convicted and punished for both crimes.[4]

(14) The record does not support Caulk's claim that there was insufficient evidence to convict him of Robbery in the First Degree and PDWDCF because the State did not prove that he had a weapon. In determining the sufficiency of the evidence, the Court examines "whether any rational trier of fact, reviewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[5] To convict Caulk of Robbery in the First Degree, the

---

[2] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[3] *Sullins v. State*, 930 A.2d 911, 915 (Del. 2007) (emphasis added).
[4] *LeCompte v. State*, 516 A.2d 898, 900 (Del. 1986)
[5] *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991).

State was required to prove that, in the course of committing theft, Caulk used or threatened the immediate use of force upon another person with the intent to compel that person to deliver up the property and displayed what appeared to be a deadly weapon or represented by word or conduct that he was in possession or control of a deadly weapon.[6] The State was therefore not required to prove that Caulk actually possessed a deadly weapon in order to prove he committed Robbery in the First Degree. But to convict Caulk of PDWDCF, the State had to prove that Caulk possessed a deadly weapon during the commission of a felony.[7]

(15) The evidence presented at trial was sufficient to convict Caulk for three counts of Robbery in the First Degree charges and one count of PDWDCF. For the April 19th robbery and PDWCF charge, the evidence included the clerk's identification of Caulk in the photograph array, his testimony that Caulk pulled out a knife and made him open the register and give him money, and surveillance video corroborating this testimony, including Caulk's brandishing of a knife. For the May 4th robbery, the evidence included the clerk's identification of Caulk in a photograph array, the clerk's testimony that Caulk pressed something that felt like a knife against his back, demanded money from the register, and took money from the register as well as cigarettes, surveillance video that showed Caulk shoving the clerk, taking

---

[6] 11 *Del. C.* § 831, 832.
[7] 11 *Del. C.* § 1447(a).

7

money from the register, and taking other items behind the counter, and the cell phone analysis. For the May 8th robbery, the evidence included the clerk's identification of Caulk in a photograph array, the clerk's testimony that Caulk showed something black that the clerk thought was a knife and took money from the register as well as cigarettes and lottery tickets, surveillance video showing Caulk gesture at the clerk, go behind the counter, and take something from the register after the clerk opened it, a customer's identification of Caulk as the robber, and the cell phone analysis.

(16) Caulk next asserts two perjury claims. As to his claim that the Superior Court should have declared a mistrial based on the clerk's perjury, he did not raise this claim below and has failed to identify how the clerk committed perjury. As to his claim that Sergeant Gifford committed perjury by testifying that he was at the scene of the arrest because Officer Lynch testified he was the only officer there, Caulk distorts both witness's testimony. Officer Lynch testified that he was by himself when he first saw and stopped Caulk, but other police officers were in the area. Sergeant Gifford testified that he was behind Officer Lynch. Caulk has not shown that Sergeant Gifford committed perjury.

(17) Caulk did not file a motion to suppress, so we review his claim of a *Miranda* violation for plain error.[8] "Under the plain error standard of review, the

---

[8] Supr. Ct. R. 8.

8

error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9] "The doctrine of plain error is limited to material defects which are apparent on the face of the record."[10] Other than Officer Lynch testifying that Caulk identified himself when asked, Caulk does not identify any statements he made to the police that were admitted at trial. There is no plain error here.

(18) Finally, Caulk argues that the Superior Court erred in admitting a blue hooded sweatshirt found at his house because it did not match the clothing of the robber in the April 19th and May 4th surveillance videos. Caulk's counsel did not object to admission of the hooded sweatshirt at trial so we review for plain error.[11] The police officer who found the hooded sweatshirt testified that it appeared similar to what the robber was wearing in the April 19th and May 4th surveillance videos, which were also admitted into evidence. Any questions as to whether the hooded sweatshirt recovered at the house was the same hooded sweatshirt as in the video went to the weight of the evidence and not its admissibility. Under these circumstances, the Superior Court did not commit plain error in admitting the hooded sweatshirt.

---

[9] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[10] *Id.*
[11] Supr. Ct. R. 8.

9

(19) This Court has reviewed the record carefully and has concluded that Caulk's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Caulk could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:


*/s/ Karen L. Valihura*
Justice