IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FREDDY L. GANTIER,[1] | § | |
| | § | No. 468, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2207014787 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: June 3, 2024
Decided: July 17, 2024

Before **TRAYNOR, LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1)    On September 7, 2023, a Superior Court jury found the appellant, Freddy L. Gantier, guilty of drug dealing and drug possession. For purposes of sentencing, the Superior Court merged the drug possession conviction with the drug dealing conviction. The Superior Court sentenced Gantier, effective July 28, 2022,

---

[1] The State advises that the appellant's last name was misspelled "Gantier" on the Superior Court docket sheet and should be spelled "Gautier." Because the appellant's last is spelled "Gantier" throughout most of the Superior Court record, including the sentencing order, and this appeal, including the notice of appeal, we will use "Gantier" to avoid confusion. We intend no disrespect.

to fifteen years of Level V incarceration, suspended after thirty months for six months of Level III probation. This is Gantier's direct appeal.

(2) The evidence presented at trial established that Gantier was under surveillance by Maryland State Police in July 2022. On July 25, 2022, Maryland police officers followed Gantier from Cecil County, Maryland to a shopping center at 4th and Adams Street in Wilmington, Delaware. The Maryland police officers contacted Sergeant Thomas Kashner, a Homeland Security Investigations task force officer with the Newport Police Department, for assistance. Sergeant Kashner joined the Maryland police officers at the shopping center. Gantier exited the maroon van in which he arrived and walked around the city. He was wearing a yellow shirt and yellow crossbody bag. When Gantier went into an alleyway, the police lost sight of him. The police later observed Gantier, wearing the same shirt and crossbody bag, return to the van.

(3) On July 27, 2022, the same Maryland police officers followed Gantier from Cecil County to the same shopping center in Wilmington. The Maryland officers contacted Sergeant Kashner, who again joined them at the shopping center. Gantier exited a silver Chevy Trailblazer and walked around the city. He was wearing a blue shirt and the same yellow crossbody bag he had worn on July 25th. The police again lost sight of Gantier as he went into an alleyway. They later saw him return to the Trailblazer and leave Wilmington.

(4)     The police followed the Trailblazer onto Interstate 95.  When the Trailblazer's driver committed a traffic violation near Route 896, Sergeant Kashner turned on his lights and siren, which activated his motor vehicle recorder ("MVR"), and pulled the Trailblazer over.  As Sergeant Kashner approached the front passenger side of the Trailblazer where Gantier was sitting, he observed that Gantier was shirtless with blue wax paper and a torn plastic bag on his stomach.  Sergeant Kashner testified that the wax paper and plastic bag were consistent with the packaging typically used for heroin or fentanyl.

(5)     In his search of the Trailblazer, Kashner found a brown bag directly behind where Gantier had been sitting.  The brown bag contained the blue shirt and yellow crossbody bag Gantier had been wearing earlier.  The crossbody bag contained 126 bags of what Sergeant Kashner suspected to be heroin or fentanyl.  Sergeant Kashner also found that Gantier was carrying $90.00 in cash, consisting of $1.00 and $5.00 bills.

(6)     The State played a redacted version of the MVR recording for the jury.  The redacted recording showed Sergeant Kashner stopping the Trailblazer and arresting Gantier.  After administering *Miranda* warnings, Sergeant Kashner questioned Gantier, who said he was set up.

(7)     A forensic analytical chemist from the Division of Forensic Science tested 26 of the 126 bags and determined that the bags contained heroin,

3

fluorofentanyl, and fentanyl. The chemist calculated that the total weight of the substances in the 126 bags was 5.10 grams with an uncertainty measurement of .47 grams, which meant that the weight could range between 4.63 grams and 5.57 grams. A Wilmington police officer opined that Gantier was engaged in drug dealing based on the amount of heroin and the amount and denomination of currency in his possession at the time of his arrest.

(8) Gantier did not testify. During closing arguments, Gantier's counsel emphasized that there was no evidence of the controlled purchase of drugs from Gantier or of Gantier engaging in hand-to-hand drug transactions. Counsel also argued that the uncertainty measurement of .47 grams meant the State had not proven beyond a reasonable doubt that Gantier possessed five or more grams of heroin. The jury found Gantier guilty of (i) drug dealing (tier 2 quantity—two or more grams of heroin) as a lesser-included offense of drug dealing (tier 3 quantity—five or more grams of heroin); and (ii) drug possession (tier 2 quantity—two or more grams of heroin) as a lesser-included offense of drug possession (tier 3 quantity—five or more grams of heroin).

(9) On appeal, Gantier's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably

4

appealable issues. Counsel informed Gantier of the provisions of Rule 26(c) and provided Gantier with a copy of the motion to withdraw and the accompanying brief.

(10) Counsel also informed Gantier of his right to identify any points that he wished this Court to consider on appeal. Gantier has raised points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(11) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2] Gantier's arguments on appeal may be summarized as follows: (i) there was no argument concerning the stop and search of the Trailblazer, which were based on manufactured statements contrary to the MVR recording; and (ii) the evidence was not sufficient to support his convictions.

(12) We construe Gantier's first argument as a claim that his counsel was ineffective for failing to move to suppress the evidence found in the Trailblazer. We decline to consider that claim in this appeal. As a general rule, the Court will not

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927–28 (Del. 1996).

consider a claim of ineffective assistance of counsel on direct appeal.[3] Typically, an ineffective-assistance claim is pursued through a motion for postconviction relief under Superior Court Criminal Rule 61 and is adjudicated on the basis of the record developed during the postconviction proceeding.[4]

(13) Gantier did not move for a judgment of acquittal in the Superior Court, so we review his insufficient-evidence claim for plain error.[5] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6] There is no plain error here as there was sufficient evidence to support Gantier's convictions for drug dealing and drug possession.

(14) To establish that Gantier was guilty of drug dealing (tier 2—heroin), the State had to prove that he knowingly possessed two or more grams of heroin with the intent to deliver it.[7] Based on the testimony concerning Gantier's trips to and from Wilmington on August 25, 2022 and August 27, 2022, the photographs of Gantier wearing a yellow crossbody bag in Wilmington on those dates, the 126 bags

---

[3] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[4] *Id.*
[5] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).
[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (citing *Bromwell v. State*, 427 A.2d 844, 893 n.12 (Del. 1981))..
[7] 16 *Del. C.* § 4751C(2)(b); 16 *Del. C.* § 4753(a)(1).

6

found in the yellow crossbody bag, the chemist's testimony concerning the presence of heroin in those bags and the weight of those bags, and the police officer's testimony that the quantity of heroin and the denomination of the $90.00 found on Gantier was consistent with drug dealing, a rational jury could find Gantier guilty beyond a reasonable doubt of drug dealing (tier 2—heroin).

(15) To establish that Gantier was guilty of drug possession (tier 2—heroin), the State had to prove that he knowingly possessed two or more grams of heroin.[8] Based on the photographs of Gantier wearing a yellow crossbody bag in Wilmington on August 25, 2022 and August 27, 2022, the blue wax paper and plastic bag seen on Gantier's stomach during the traffic stop, the 126 bags in the crossbody bag, and the chemist's testimony concerning the presence and weight of heroin in those bags, a rational jury could find Gantier guilty beyond a reasonable doubt of drug possession (tier 2—heroin).

(16) This Court has reviewed the record carefully and has concluded that Gantier's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Gantier could not raise a meritorious claim in this appeal.

---

[8] 16 *Del. C.* § 4751C(2)(b); 16 *Del. C.* § 4753(a)(2).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

_/s/ Abigail M. LeGrow_
Justice